# FOR PUBLICATION



**FILED**
Nov 21 2014, 8:35 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOEL L. SCHUMM**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTWONNA SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1312-CR-1015 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy Jones, Judge
Cause No. 49F08-1203-FD-19889

**November 21, 2014**

**OPINION – FOR PUBLICATION**

**MAY, JUDGE**

Antwonna Smith was convicted after a jury trial of Class D felony theft[1] and Class D felony resisting law enforcement.[2] Resisting law enforcement is a Class A misdemeanor, but when Smith committed the offense it could be enhanced to a Class D felony if the person "inflicts bodily injury on or otherwise causes bodily injury to another person." Ind. Code § 35-44.1-3-1. Smith's conviction of resisting law enforcement was enhanced to a Class D felony on the ground she inflicted bodily injury after a police officer scraped his knuckle and fingertip while forcing Smith to the ground. Smith argues on appeal the enhancement was error because she did not "inflict" the injury on the officer and the "cause"[3] of the injury was the officer's action, not hers. We agree and therefore reverse and remand so the trial court may enter a conviction of resisting law enforcement as a Class A misdemeanor.

## FACTS AND PROCEDURAL HISTORY[4]

Smith left a Meijer store without paying for some items. A Meijer loss prevention employee followed Smith to the parking lot and confronted her about shoplifting. She denied taking the items and continued walking toward her car. Another loss prevention employee

---

[1] Ind. Code § 35-43-4-2 (2011).

[2] Ind. Code § 35-44.1-3-1 (2011).

[3] While the Indiana statute allows an enhancement when a defendant "inflicts bodily injury on *or otherwise causes* bodily injury," Ind. Code § 35-44.1-3-1 (emphasis added), Smith was charged only with "inflicting" bodily injury. The charging information does not allege she "caused" the officer's injury; it alleges only that she "did knowingly and forcibly resist, obstruct, or interfere with [the officer] . . . and further that while doing so, [Smith] *inflicted bodily injury* on [the officer]." (App. at 22) (emphasis added).
  The purpose of an information is to advise the defendant of the crime with which she is charged so she can prepare a defense. *Bei Bei Shuai v. State*, 966 N.E.2d 619, 626 (Ind. Ct. App. 2012), *trans. denied.* Smith does not argue on appeal the charging information was inadequate.

[4] We heard oral argument September 12, 2014, at Linton-Stockton High School in Linton, Indiana. We thank the school for its hospitality and commend counsel for the quality of their oral advocacy.

called Officer Rick Jones, a police officer and former Meijer loss prevention employee who was nearby. The employee told Officer Jones about the shoplifting and provided a description. Smith left in her car, and two Meijer employees followed her so they could identify her when Officer Jones stopped her.

Officer Jones found Smith's car and pulled her over. When the Meijer employees arrived, Officer Jones had them look into Smith's car to identify the items she had taken from the store. They identified Smith and the items, and Officer Jones asked Smith to step out of the car so he could arrest her. When Smith was outside the car, Officer Jones asked her to put her hands behind her back, but she did not comply. The officer tried to handcuff her, but she would not put her hands behind her. Smith moved toward the driver's door of her car, and the officer "forcefully put all [his] body weight onto her body . . . to prevent her from getting into the vehicle." (Tr. at 77.)

There was a struggle, and one of the Meijer employees grabbed Smith's arm.[5] Officer Jones told Smith: "You don't want me to take you to the ground. It's wet. Just put your hands behind your back and we won't end up on the ground. You won't be taken to the ground." (*Id*. at 78.) Smith still would not submit to being handcuffed, so the officer "gave her a knee strike," (*id.*), which he described as "a pain compliance technique to whereas if I can apply some pain to . . . a nerve that runs to the muscle of your leg. . . . [I]t's a temporary

---

[5] The State says in its brief that the employee "felt compelled to intervene and assist the police officer by trying to hold down one of Smith's arms." (Br. of Appellee at 3.) Nothing in the part of the transcript to which the State directs us suggests the employee was "compelled" to do what he did or what his reasons were for doing it. The transcript says only that the employee "came onto her left side and actually grabbed a hold of her arm . . . her left arm." (Tr. at 78.)

pain . . . it's designed to take your mind off what you're currently doing." (*Id*. at 78-79.) That did not have the desired effect, so the officer "pulled her arm as [sic] about as possibly as hard as I could [and] we ended up on the ground." (*Id*. at 80.)

Smith told Officer Jones he had broken her leg, and she testified she was hospitalized four days for her injuries. After they fell, Officer Jones discovered "lacerations to [sic] scraping from being on the pavement . . . in [sic] one of my knuckles and my fingertip area." (*Id*. at 81.) The injury was "painful," (*id*. at 83), but was "nothing that prohibited me from continuing to write with a pencil" and it did not prevent the officer from returning to work. (*Id*.) Medics cleaned the wound but did not bandage it.

The State charged Smith with theft and resisting arrest, and it elevated the latter charge to a Class D felony based on the injury to the officer. A jury found Smith guilty of both.

## DISCUSSION AND DECISION

On a review for sufficient evidence, an appellate court will look only to the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. *Woods v. State*, 274 Ind. 624, 629, 413 N.E.2d 572, 575 (1980). If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. *Id*. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses. *Id*. But on a claim of insufficient evidence we have a duty to examine the evidence closely, not with a view towards resolving conflicts thereon, but for the purpose of determining whether, after resolving all reasonable doubts in favor of the verdict,

4

it may be said that, on such evidence, a reasonable person could have reached such a verdict, beyond a reasonable doubt. *Id*.

There must be substantial evidence of probative value before we can decide an accused has been proven guilty beyond a reasonable doubt. *Id*. That rule places the evidence before the court on appeal, not for the purpose of weighing it, or for the purpose of determining the facts when there is actual conflict, but for the purpose of deciding, as a question of law, whether there is substantive evidence in support of the required material facts essential to a conviction. *Id*. at 629-630, 413 N.E.2d at 575. It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla. *Id*. at 630, 413 N.E.2d at 575.

At the time of Smith's offense,[6] Ind. Code § 35-44.1-3-1 provided: "A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties; . . . commits resisting law enforcement." The offense was a Class A misdemeanor, but could be enhanced to a Class D felony if the person "inflicts bodily injury on or otherwise causes bodily injury to another person." *Id.*

Smith concedes the officer was injured during the arrest, but argues the enhancement was improper because the State did not prove Smith "inflicted" or "caused" the injury. The officer was injured when he fell to the ground while forcing Smith to the ground. Smith says

---

[6] Thereafter, Public Law No. 158-2013 amended a number of statutes, including resisting law enforcement, to implement a six-tiered "Level" sentencing structure for felony convictions in place of the four-tiered "Class" sentencing structure for felonies. *Pavlovich v. State*, 6 N.E.3d 969, 973 n.3 (Ind. Ct. App. 2014), *trans.*

the events in this case might support an enhancement if the statute required that conduct "result in" injury to another person, as did the language in Ind. Code § 35-42-2-1, which provided battery was a Class B misdemeanor but was enhanced to a Class A misdemeanor "if it results in bodily injury to any other person." Smith notes similar language in other statutes. *See*, *e.g.*, Ind. Code § 35-42-5-1 (2013) (robbery is a Level 5 felony, but is a Level 2 felony "if it results in serious bodily injury to any person"); Ind. Code § 35-43-2-1 (2013) (burglary is a Level 5 felony, but is a Level 3 felony "if it results in bodily injury").

When construing a penal statute, ambiguous language must be construed strictly against the State and in favor of the accused. *Brown v. State*, 868 N.E.2d 464, 470 (Ind. 2007). Brown was charged with identity deception, which is a crime when "a person . . . knowingly or intentionally . . . uses the identifying information of another person: (1) without the other person's consent; and (2) with intent to: (A) harm or defraud another person . . . or . . . profess to be another person." Ind. Code § 35-43-5-3.5(a). Our Indiana Supreme Court determined the phrase "identifying information" required the State to prove Brown "used *an individual's* name, address, date of birth, or other identifiers, to commit the charged crime." *Brown*, 868 N.E.2d at 470 (emphasis in original). There was evidence Brown used information identifying a radio station without its consent, but there was no evidence he used "the name, address, date of birth, or other identifiers of any existing human being in perpetrating his hoax." *Id.* As the evidence did not establish Brown committed the offense by using information specifically identifying another individual human being, the

denied.

6

evidence was insufficient to prove all the elements of identity deception. *Id.*

Smith did not "inflict" an injury on the officer or "cause" the officer's injury, and her conviction should not have been enhanced to a felony. Officer Jones scraped his knuckle and fingertip when he fell while forcing Smith to the ground, but we agree with Smith that she was "a passive part of the encounter" and "took no actions toward" him. (Br. of Appellant at 7.)

We acknowledge that in *Whaley v. State,* 843 N.E.2d 1, 10-11 (Ind. Ct. App. 2006), *trans. denied*, a panel of this court reached the opposite result. Whaley, as does Smith in the case before us, compared the "*inflicts* bodily injury" phrase with other statutes that use the phrase "*results in* bodily injury." Two deputies were chasing Whaley and they caught him when he fell down. Whaley put his arms underneath his body so the deputies could not handcuff him. The deputies had to hit Whaley's forearms in order to bring his arms behind his back. As a result, both deputies injured their hands. Whaley argued he did not inflict bodily injury on the deputies; rather, he contended they inflicted injury on themselves by hitting Whaley's arms.

Whaley argued the phrase "*inflicts* bodily injury" implied a "more direct causation." *Id.* at 11. The *Whaley* panel rejected that argument. It noted penal statutes must be strictly construed against the State, but a statute should not be overly narrowed so as to exclude cases fairly covered by it, and it should be interpreted so as to give efficient operation to the expressed intent of the legislature. *Id.* The statute does not define "inflict," and when the legislature has not defined a word, we give the word its common and ordinary meaning. *Id.*

7

"Inflict" is generally defined as "to cause (something unpleasant) to be endured." *Id.* (quoting *Merriam–Webster Online Dictionary*, available at www.m-w.com/dictionary). That panel therefore determined a person resists law enforcement as a Class D felony if, while committing the offense, he "causes someone to experience bodily injury." *Id.* The deputies' injuries were "directly related to and caused by Whaley's resisting arrest." *Id.* Therefore, such actions were included within the definition of "inflict," and the evidence was sufficient to sustain Whaley's convictions. *Id.*

As we do not believe a person who is thrown to the ground necessarily "inflicts" or "causes" an injury suffered by the person who throws her to the ground, we decline to follow *Whaley*:

> This Court is respectful of the decisions of other panels and has so indicated in previous decisions. *See, e.g., Lincoln Utils., Inc. v. Office of Util. Consumer Counselor,* 661 N.E.2d 562, 565 (Ind. Ct. App. 1996) (a court on appeal will follow its previous decisions unless provided with strong justification for departure), [*reh'g denied*,] *trans. denied.* Indiana does not, however, recognize horizontal *stare decisis.* Thus, each panel of this Court has coequal authority on an issue and considers any previous decisions by other panels but is not *bound* by those decisions. *See, e.g., O'Casek v. Children's Home and Aid Society of Illinois,* 229 Ill.2d 421, 323 Ill. Dec. 2, 892 N.E.2d 994, 1014 n.4 (2008) (horizontal *stare decisis* is not an inexorable command, whereas vertical *stare decisis* is an obligation to follow the decisions of superior tribunals).
>
> The Indiana Appellate Rules specifically contemplate diverse outcomes by panels of this Court. Appellate Rule 57, governing petitions for transfer to our Supreme Court, recognizes conflicting decisions by this Court's panels as a ground for transfer.
>
> It is axiomatic that the body of law on a topic is shaped by distinctions in the facts and circumstances presented in each case. . . . *See* Ind. Professional Conduct Rule 3.1, Comment ("[T]he law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.").

*In re C.F.*, 911 N.E.2d 657, 658 (Ind. Ct. App. 2009).

In the instant case, Officer Jones chose to halt Smith's resistance by throwing her to the ground, and the officer was injured in so doing. Unlike Whaley, Smith did not create a scenario in which Officer Jones' only option in handcuffing her was to remove her hands from a location in which he could not reach.

As Smith did not inflict or directly cause Officer Jones' injury, her conviction should not have been enhanced to a felony. We must therefore reverse and remand.

Reversed and remanded.

BAILEY, J., and BROWN, J., concur.