

FILED

Mar 02 2018, 9:00 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary W. Yoakum,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 2, 2018<br><br>Court of Appeals Case No.<br>79A02-1706-CR-1309<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Laura Zeman,<br>Judge<br><br>Trial Court Cause No.<br>79D04-1611-CM-4207 |

**Barnes, Judge.**

## Case Summary

[1] Gary Yoakum appeals his conviction and sentence for Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance and Class C misdemeanor possession of paraphernalia. We affirm.

# Issues

Yoakum raises three issues, which we restate as:

I.     whether the synthetic drug lookalike substance statutes are unconstitutionally vague;

II.    whether the evidence is sufficient to sustain Yoakum's conviction for Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance; and

III.   whether his sentence is inappropriate.

# Facts

On November 20, 2016, Yoakum was a passenger in a vehicle driven by Tracy VanWienen. Lafayette Police Officer Matthew Meeks attempted to stop VanWienen's vehicle for failure to have a license plate light. VanWienen did not stop the vehicle for approximately four blocks, and Officer Meeks could see the passenger, Yoakum, making "furtive" movements in the car. Tr. Vol. II p. 32. As soon as the vehicle stopped, Yoakum opened the passenger door, and Officer Meeks yelled at him to get back inside the vehicle. When another officer arrived, they ordered Yoakum to get out of the vehicle, and he refused. The officers removed Yoakum from the vehicle and found "spice" on the passenger's seat, on the passenger floorboard, and on Yoakum's pants. The officers also found a ripped plastic baggie containing "spice" and a glass pipe behind the passenger seat that tested positive for methamphetamine. *Id.* at 56. VanWienen was arrested for operating a vehicle while intoxicated.

[4] The State charged Yoakum with Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance and Class C misdemeanor possession of paraphernalia. At his jury trial, Yoakum testified that the drugs belonged to VanWienen, not him. Specifically, he testified, "[N]one of the drugs that were found in the car belonged to me." *Id.* at 101. During closing arguments, Yoakum's attorney again argued that the drugs and pipe belonged to VanWienen. His attorney also stated:

> Also with respect to the spice one thing I found kind of disturbing I wrote it down as soon as heard it because I couldn't believe it that any type of plant material and any type of chemical can be essentially illegal in spice which I find kind of disturbing; I don't dispute that this is spice in this case it just disputes the fact that of who had possession of that spice, certainly it was possessing paraphernalia and so that's why we ask you to come back with a verdict of not guilty[.]

*Id.* at 119. The jury found Yoakum guilty as charged. The trial court sentenced him to concurrent sentences of 365 days for the Class A misdemeanor conviction and sixty days for the Class C misdemeanor conviction. Yoakum now appeals.

## Analysis

### I. Vagueness

[5] Yoakum argues that Indiana Code Section 35-48-4-11.5, which criminalizes possession of a synthetic drug or synthetic drug lookalike substance, and Indiana Code Section 35-31.5-2-321.5, which defines a synthetic drug lookalike

substance, are unconstitutionally vague. However, as the State points out, Yoakum "does not make any argument that Section 35-48-4-11.5 is unconstitutionally vague in and of itself." Appellee's Br. p. 17. Rather, Yoakum argues only that the definition in Indiana Code Section 35-31.5-2-321.5 is "unconstitutionally vague, thereby creating a derivative problem" for Indiana Code Section 35-48-4-11.5. *Id.*

[6] Whether a statute is unconstitutional is a question of law and is reviewed de novo. *Lee v. State*, 973 N.E.2d 1207, 1209 (Ind. Ct. App. 2012), *trans. denied*. We approach such questions with the presumption that the statute is constitutional, and the challenger is burdened to prove otherwise. *Id.* "Any reasonable doubts and constructions as to the statute's validity are resolved in favor of constitutionality." *Id.* "Due process principles advise that a penal statute is void for vagueness if it does not clearly define its prohibitions." *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007) (citing *Klein v. State*, 698 N.E.2d 296, 299 (Ind. 1998)). A criminal statute may be invalidated for vagueness for either of two independent reasons: (1) for failing to provide notice enabling ordinary people to understand the conduct that it prohibits, and (2) for the possibility that it authorizes or encourages arbitrary or discriminatory enforcement. *Id.* (citing *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 1859 (1999); *Healthscript, Inc. v. State*, 770 N.E.2d 810, 815-16 (Ind. 2002)). Although Yoakum raises both prongs, most of his argument seems to focus on the second prong.

[7]  Yoakum did not raise this issue to the trial court.  "Generally, the failure to file a proper motion to dismiss raising the Constitutional challenge waives the issue on appeal." *Payne v. State*, 484 N.E.2d 16, 18 (Ind. 1985); *Lee*, 973 N.E.2d at 1209.  Yoakum did not file a motion to dismiss, and he has waived the issue.

[8]  Waiver notwithstanding, "a statute is void for vagueness only if it is vague as applied to the precise circumstances of the present case." *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008).  "The defendant is not at liberty to devise hypothetical situations which might demonstrate vagueness." *Id.* Yoakum argues that the statute does not give sufficient notice of what a synthetic drug lookalike substance is and the lack of a clear definition invites arbitrary enforcement of the statute.  However, whether the substance found in VanWienen's vehicle was spice was not at issue during this trial.  Yoakum admitted that the drugs found in the vehicle were spice.  The only issue here was whether the drugs belonged to Yoakum or VanWienen.  Applied to the precise circumstances of this case, the statute is not void for vagueness. Yoakum has failed to meet his burden of demonstrating that the statute is unconstitutionally vague.

## II.  *Sufficiency of the Evidence*

[9]  Yoakum next argues that the evidence is insufficient to sustain his conviction for Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance.  When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility.  *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).  "We consider

only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[10] Indiana Code Section 35-48-4-11.5(c) provides: "A person who knowingly or intentionally possesses a synthetic drug or synthetic drug lookalike substance commits possession of a synthetic drug or synthetic drug lookalike substance, a Class A misdemeanor." The statute also provides that a "'synthetic drug lookalike substance' has the meaning set forth in IC 35-31.5-2-321.5(a)(2)." I.C. § 35-48-4-11.5(a). Indiana Code Section 35-31.5-2-321.5 then provides:

> (a) "Synthetic drug lookalike substance", except as provided in subsection (b), means one (1) or more of the following:
>
> > (1) A substance, other than a synthetic drug, which any of the factors listed in subsection (c) would lead a reasonable person to believe to be a synthetic drug.
> >
> > (2) A substance, other than a synthetic drug:
> >
> > > (A) that a person knows or should have known was intended to be consumed; and
> > >
> > > (B) the consumption of which the person knows or should have known to be intended to cause intoxication.

(b)     The term "synthetic drug lookalike substance" does not include the following:

    (1)     Food and food ingredients (as defined in IC 6-2.5-1-20).

    (2)     Alcohol (as defined in IC 7.1-1-3-4).

    (3)     A legend drug (as defined in IC 16-18-2-199).

    (4)     Tobacco.

    (5)     A dietary supplement (as defined in IC 6-2.5-1-16).

(c)     In determining whether a substance is a synthetic drug lookalike substance, the following factors may be considered:

    (1)     The overall appearance of a dosage unit of the substance, including its shape, color, size, markings or lack of markings, taste, consistency, and any other identifying physical characteristics.

    (2)     How the substance is packaged for sale or distribution, including the shape, color, size, markings or lack of markings, and any other identifying physical characteristics of the packaging.

(3) Any statement made by the owner or person in control of the substance concerning the substance's nature, use, or effect.

(4) Any statement made to the buyer or recipient of the substance suggesting or implying that the substance is a synthetic drug.

(5) Any statement made to the buyer or recipient of the substance suggesting or implying that the substance may be resold for profit.

(6) The overall circumstances under which the substance is distributed, including whether:

   (A) the distribution included an exchange of, or demand for, money or other property as consideration; and

   (B) the amount of the consideration was substantially greater than the reasonable retail market value of the substance the seller claims the substance to be.

[11] Yoakum argues that the State failed to present sufficient evidence to show that the substance found in VanWienen's vehicle was a synthetic drug lookalike substance. According to Yoakum, there was no scientific testing of the substance, and the officers' testimony did not establish that the substance was a synthetic drug lookalike substance.

[12] At the jury trial, Officer Joshua Saxton testified as follows regarding spice:

Q Ok. What can you tell us briefly about your understanding of how—what spice is made up of or how it's made?

A Sure. Basically what spice starts out as is any plant materials or herb material that you find, you know, I know it's a marshmallow herb is a big one they use; it's like a brown, green, just a leafy substance; looks like plant material. And from what they do then is they put a chemical on it that gives it the agent that when you consume it or smoke it or introduce it into the body it gives you the high with it.

Q Is this a specific chemical, just any chemical?

A There's not specific chemicals, no. There's so many of them.

* * * * *

Q What color is it?

A Usually a green or brown or off—yellow dirt brown color.

Q What does it smell like?

A It has a—it's like a floral—if you mix like a floral, like the plant material and a chemical odor together that's what you're gonna get.

Q So you get both of those smells kind of at the same time?

A Yes ma'am.

Q Ok. And how would concur [sic] it through your training and experience visually, how would you compare say spice or something like marijuana?

A What I've seen the difference between spice and marijuana is marijuana comes in kind of like buds, they're a little bit bigger and the spice is just looks just like shake, basically, it's just small leaves.

Q Is it your testimony that spice can be made up of just any plant material mixed with any chemical?

A Correct.

Tr. Vol. II pp. 48-49. Officer Saxton testified that he could smell spice in VanWienen's vehicle and that he found spice "all over that car." *Id.* at 54. The officers also found a baggie containing spice that was ripped open.

[13] Officer Shawn Verma then testified that, as he was searching VanWienen's car, he saw a green leafy substance "all over the passenger seat, all over the floor." *Id.* at 76. He testified that he knew from experience and the smell that the substance was spice because he quickly got a headache, which he usually gets from exposure to the chemicals in spice. *Id.* He testified that spice is a "synthetic marijuana" and that it has a "bitter chemically smell" that is distinct from marijuana. *Id.*

[14] At the trial, Yoakum also testified and claimed that the drugs belonged to VanWienen, not him. Specifically, he testified, "[N]one of the drugs that were found in the car belonged to me." *Id.* at 101. During closing arguments,

Yoakum's attorney stated: "I don't dispute that this is spice in this case it just disputes the fact that of who had possession of that spice[.]" *Id.* at 119.

[15] "For offenses involving controlled substances, the State is not required to introduce the subject contraband to obtain a conviction for dealing or possession." *Boggs v. State*, 928 N.E.2d 855, 865 (Ind. Ct. App. 2010), *trans. denied*. The identity of a controlled substance may be established through witness testimony and circumstantial evidence. *Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009). Our supreme court has held that, although "chemical analysis is one way, and perhaps the best way, to establish the identity of a compound," the testimony of "someone sufficiently experienced with the drug may establish its identity, as may other circumstantial evidence." *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind. 2001).

[16] In considering whether the State met its burden, we consider the definition of synthetic drug lookalike substance in Indiana Code Section 35-31.5-2-321.5. The officers that testified at Yoakum's trial had significant experience dealing with synthetic marijuana, which is otherwise known as "spice." They testified that spice is consumed to get "high." *Id.* at 48. They further testified that the substance's appearance and smell was consistent with spice and that some of it was packaged in a ripped baggie. During his testimony, Yoakum did not dispute that the substance was spice, and during closing argument, his attorney did not dispute that it was spice. We conclude that the State presented sufficient evidence to demonstrate that Yoakum knowingly or intentionally

possessed a synthetic drug lookalike substance. The evidence is sufficient to sustain his conviction.

### III. Sentence

[17] Yoakum argues that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. *Id.* We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[18] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including

whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[19] The trial court here imposed a one-year sentence for Yoakum's Class A misdemeanor conviction and a concurrent sixty-day sentence for the Class C misdemeanor conviction. Under Indiana Code Section 35-50-3-2, a person convicted of a Class A misdemeanor "shall be imprisoned for a fixed term of not more than one (1) year. . . ." Indiana Code Section 35-50-3-4 provides for a fixed term of not more than sixty days for a Class C misdemeanor conviction. Yoakum argues that he inappropriately received the maximum sentence.

[20] Regarding the nature of the offense, Yoakum argues that he was found with a small amount of the "leafy substance." Appellant's Br. p. 18. The State presented evidence that Yoakum possessed spice and a pipe that field-tested positive for methamphetamine. When he attempted to stop the vehicle, the officer saw Yoakum moving around in the passenger seat. In the vehicle, officers found a ripped baggie containing a small amount of spice, and spice was scattered on the passenger seat and floorboard. The officers also found spice sticking to Yoakum's pants.

[21] As for Yoakum's character, fifty-four-year-old Yoakum has amassed a substantial criminal history. He has five prior felony convictions for operating while intoxicated, dealing marijuana, maintaining a common nuisance, conspiracy to deal cocaine, and escape. He also has seven misdemeanor convictions for operating while intoxicated, battery (three times), public

intoxication, and disorderly conduct. Yoakum argues that the vast majority of his criminal offenses were committed decades before the instant offense. However, his probation was revoked four times since 2005, and he has failed to take advantage of multiple substance abuse treatment opportunities that were provided to him at that time.

[22] We acknowledge that Yoakum's offense is not egregious. However, his criminal history and failure to correct his behavior certainly justified the sentence imposed by the trial court. Given Yoakum's criminal history, we cannot say that the one-year sentence is inappropriate.

## Conclusion

[23] Yoakum has failed to demonstrate that the synthetic drug lookalike substance statutes are unconstitutionally vague as applied in this case. The evidence is sufficient to sustain his conviction for Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance, and we cannot say that his sentence is inappropriate. We affirm.

[24] Affirmed.

Najam, J., and Mathias, J., concur.